UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| F.F.T., LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 1:19-cv-03027-RLY-MJD |
| | ) |
| THOMAS SEXTON PH.D., et al. | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' Motion for Partial Dismissal and to Strike Irrelevant Exhibits to Amended Complaint. [Dkt. 42.] On January 17, 2020, District Judge Richard L. Young designated the undersigned Magistrate Judge to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [Dkt. 66.] For the reasons set forth below, the Magistrate Judge recommends that the motion be **DENIED**.

### I.  MOTION TO DISMISS

The Defendants have moved to dismiss some of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). In reviewing a motion filed under Rule 12(b)(6), the Court "must accept all well pled facts as true and draw all permissible inferences in favor of the plaintiff." *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012). For a claim to survive a motion to dismiss for failure to state a claim, it must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Brooks v. Ross*,

578 F.3d 574, 581 (7th Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (omission in original).  A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Agnew*, 683 F.3d at 334 (citations omitted).  A complaint's factual allegations are plausible if they "raise the right to relief above the speculative level."  *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 556 (2007).

### A.  Plaintiff's Allegations

The allegations set forth in the First Amended Complaint are detailed and lengthy.  The basic factual allegations, which are taken as true for purposes of this motion, are set forth below.

Beginning in the 1960s, James F. Alexander, Ph.D., "conducted a series of psychology outcome studies to examine the effectiveness of a family-based method of interventions for adolescents with delinquency and other behavioral problems." [Dkt. 36 at 4.]  Dr. Alexander developed a therapy model that he began to refer to as Functional Family Therapy; he published a book by that same name in 1982.  "The Functional Family Therapy protocol has become so successful and revered that today it has come to be referred to by consumers and practitioners simply as 'FFT.'"  *Id.* at 5.

In 1998, Dr. Alexander, along with Defendant Thomas Sexton, Ph.D., and Richard Harrison, formed FFT, Inc., "to implement a delivery system to train therapists to administer the Functional Family Therapy protocol competently to families while adhering to the Functional Family Therapy protocol's evidence-based standards."  *Id.* at 6.  In 2002, Harrison sold his shares to FFT, Inc., and Douglas Kopp became FFT, Inc.'s CEO and Managing Member.

At some point unspecified in the Amended Complaint, Plaintiff F.F.T., LLC, "was formed to pursue the former efforts of FFT, Inc., which corporation was subsequently administratively dissolved."  *Id.*   Plaintiff currently provides services in 33 U.S. states and ten

2

other countries, using various iterations of its Functional Family Therapy protocol to "help[] troubled youth and their families overcome a variety of behavioral problems that affect children." *Id.* at 6, 7.

Plaintiff has long used the brands FFT[SM] and FUNCTIONAL FAMILY THERAPY[SM] to refer to the Functional Family Therapy protocol developed by Dr. Alexander and owned by Plaintiff and owns common law rights in those brands. Plaintiff also owns numerous registered service marks and copyrights that relate to the protocol.

Defendant Sexton initially was a member of Plaintiff. In April 2007, while he was still a member of Plaintiff, Sexton and Defendant Astrid Van Dam formed Defendant Functional Family Therapy Associates, Inc., which "purports to be a training and implementation organization offering the Functional Family Therapy protocol." *Id.* at 15. Six months later, in October 2007, Sexton surrendered his membership in Plaintiff pursuant to the terms of a confidential written settlement agreement which, *inter alia*, "granted Defendant Sexton, individually, a personal license to use F.F.T.'s then-existing Functional Family Therapy training materials so long as Defendant Sexton did not reference F.F.T., Mr. Kopp, or Dr. Alexander in connection with Defendant Sexton's use of these training materials." *Id.* (citing Exhibit N at § 1.6).

Defendant Sexton has misrepresented to "other therapy organizations and consumers that Defendant Sexton is the 'developer of Functional Family Therapy,'" and "despite the clear prohibitions of the Settlement Agreement and Defendant Sexton's admitted understanding of the obligations they create, Defendant Sexton has routinely referenced Dr. Alexander and F.F.T. in connection with Defendant Sexton's use of the FFT[SM] training materials." *Id.* at 15-16. Defendant Sexton has breached the Settlement Agreement in various other ways, including

3

breaching the confidentiality requirements and allowing "Defendants Van Dam, Functional Family Therapy Associates, and FFT Partners to utilize the training materials made available to Sexton individually under the Settlement Agreement." *Id.* at 17.

Defendants have developed a form of family counseling and therapy referred to as the Sexton Derivative that Defendants claim is an alternative to the Functional Family Therapy protocol and that "[d]espite the material differences between the Sexton Derivative and the FFT$^{SM}$ protocol, Defendants continue to promote the Sexton Derivative by, among other things, asserting and representing that the long history of evidence-based, peer-reviewed studies assessing and validating the FFT$^{SM}$ protocol support and validate the Sexton Derivative." *Id.* at 18. Defendants have infringed upon their registered marks in various ways, including selling the Sexton Derivative using the name "Functional Family Therapy" and the FFT$^{SM}$ mark.

Finally, as discussed in detail below, Plaintiff alleges that Defendants have interfered with Plaintiff's relationships with several of Plaintiff's customers.

### B. Discussion

The Amended Complaint contains eight counts. Defendants originally moved to dismiss Counts II and III of the Amended Complaint on the ground that they fail to state a claim. However, in Defendants' reply brief they address only Count II and ask only that Count II be dismissed, thereby abandoning their arguments with regard to Count III.

In Count II, Plaintiff asserts a claim for wrongful interference with business relationships and prospective advantage. Plaintiff alleges that it

> has longstanding business relationships with its clients and spent significant time and resources in developing and maintaining those relationships. For example, companies with which [Plaintiff] had existing or prospective business relationships included, as alleged herein, Valley Youth House, VisionQuest, Cayuga Centers, and New York Foundling.

4

[Dkt. 36 at 26.]  Plaintiff further alleges that Defendants, knowing of these relationships, "sent letters to potential clients like Valley Youth House, representing or insinuating that Defendants could offer the unique Functional Family Therapy training and implementation as 'another option' besides [Plaintiff]" and that "Defendants Sexton and FFT Associates conspired with Cayuga Centers to form Defendant FFT Partners for the express purpose of monetizing Plaintiff F.F.T.'s FUNCTIONAL FAMILY THERAPY$^{SM}$ protocols in direct competition with Plaintiff F.F.T., notwithstanding the fact that Cayuga Centers had previously offered Plaintiff F.F.T.'s FUNCTIONAL FAMILY THERAPY$^{SM}$ protocols as a customer of Plaintiff F.F.T." *Id.* at 27.  Plaintiff further alleges that Defendants misrepresented to Plaintiff's clients that the Sexton Derivative was the equivalent of the FFT$^{SM}$ protocol, "imposed unlawful pressures upon prospective business advantages of F.F.T., such as business with Valley Youth House, with the unlawful intent to take projects and business away from F.F.T." and "threatened certain F.F.T. clients and prospective clients with legal action if those clients did not recognize and acknowledge the Sexton Derivative as having equivalent value and results to the value and results experienced when using Plaintiff's F.F.T.'s FUNCTIONAL FAMILY THERAPY$^{SM}$ protocol." *Id.* at 27-28.  This, Plaintiff alleges, was done maliciously and without justification and caused Plaintiff's clients "to terminate or reduce their business relationship with one or more of [Plaintiff's] clients." *Id.* at 28.

Defendants argue that Count II must be dismissed because it makes allegations about interference with business relationships with clients including, but not limited to, those specifically identified in the Complaint.  This, Defendants argue, "is an attempt by Plaintiff to incorporate an unlimited universe of potential relationships into Count II, which impermissibly

denies Defendants a meaningful opportunity to mount a defense while simultaneously providing a virtual wildcard for Plaintiff to use to raise new theories of liability under the improperly-broad auspices Count II at any time during this action." [Dkt. 52 at 3-4.]  While the Court appreciates Defendants' desire to nail down the exact parameters of Plaintiff's case, that is not a proper ground for dismissing Count II.  With one exception, discussed below, Defendants do not dispute that Plaintiff states a claim with regard to the identified relationships.  The "but not limited to" qualifier does not change that fact.  Defendants can (and should) use contention interrogatories to require Plaintiff to identify the relationships that are at issue; Defendants cite to no authority for the proposition that notice pleading requires Plaintiff to identify all of them in its complaint.

Defendants also argue that Plaintiff's claim in Count II with regard to New York Foundling must be dismissed on substantive grounds.  Specifically, Defendants note that, with regard to New York Foundling, Plaintiff has asserted both a claim for wrongful interference with business relationships and prospective business advantages (Count II) and a claim for wrongful interference with contractual relationship (Count III).  These two claims, Defendants argue, are mutually exclusive, as the latter requires an ongoing contractual relationship and the former can only be asserted in the absence of a contractual relationship.  *See Levee v. Beeching*, 729 N.E.2d 215, 220 (Ind. Ct. App. 2000) ("We have consistently held that an action for intentional interference with a business relationship arises where there is no contract underlying the relationship involved in the litigation.").

Plaintiff's brief response to this argument muddles, rather than enlightens.  Plaintiff states:

> While it is true that Plaintiff had a near ten-year contractual relationship with New York Foundling whereby New York Foundling purchased Plaintiff's FFTSM services, which terminated in 2018, (*see* Plf. Am. Compl. ¶ 187), Plaintiff also

6

> alleges that New York Foundling agreed in post-termination correspondence not to use Plaintiff's FFTSM protocol and other intellectual property thereafter (*see id*. ¶ 155). Plaintiff does not allege, nor does it contend, that Plaintiff formed a new contractual relationship with New York Foundling. Plaintiff's allegations relate to New York Foundling's post-termination obligations that arose as a result of New York Foundling's termination of its contractual relationship with Plaintiff (on information and belief, at Defendants' direction) in 2018. *See*, *e.g.*, *id*. ¶ 155. Defendants misstate Plaintiff's claim for tortious interference with contractual relationships under Count III. *See* Defs. Brief, p. 8. **Although Plaintiff asserts that New York Foundling's post-termination obligations persist, Plaintiff has not alleged "that a contractual relationship both existed and continues to exist" as Defendants maintain.** Defs. Brief, p. 8.

[Dkt. 47 at 7-8] (emphasis added). This is an entirely reasonable argument—it is certainly possible that Defendants interfered with a contractual relationship while it existed and then interfered with a subsequent non-contractual relationship after the contractual relationship ended. However, later in the same brief, Plaintiff states, unequivocally, that "Plaintiff alleges that it had a contractual relationship with New York Foundling to provide Plaintiff's FFTSM services and that the agreement terminated in 2018. **F.F.T. also alleges, however, that its agreement with New York Foundling included contractual, post-termination obligations that are enforceable currently**" and that "[t]aking the allegations in the Amended Complaint as true for purposes of Defendants' Motion, **New York Foundling's contractual obligations are binding and enforceable today.** Although Defendants were aware that New York Foundling owed these post-termination contractual obligations to Plaintiff, Defendants induced New York Foundling to breach those obligations." *Id.* at 11 (emphasis added). This seems to foreclose the scenario described above. Perhaps Plaintiff intends to pursue the two claims in the alternative, although they do not explicitly say so.

The precise nature of Plaintiff's claims in Count II as they relate to its relationship with New York Foundling are, indeed, unclear. However, the Court does not believe that that opacity

7

is a proper basis of a motion to dismiss. Defendants are essentially asking to "dismiss" certain **factual allegations** contained within Plaintiff's claim that Defendants wrongfully interfered with their business relationships. That is not contemplated by Federal Rule of Procedure 12(b)(6), which requires dismissal when a party fails to state a claim upon which relief can be granted, not when some of the allegations made in support of a claim might not, as a matter of law, support an otherwise viable claim. *Cf.* Federal Rule of Civil Procedure 56(a) (permitting motion for summary judgment as to part of a claim). Accordingly, the motion to dismiss is **DENIED**.

## II. MOTION TO STRIKE EXHIBITS

Defendants ask the Court to strike Exhibits J and K to the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f), which provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." This motion is **DENIED**. The exhibits in question each consist of a copyright registration issued to Plaintiff and the copyrighted work itself. While it certainly was not necessary to attach those documents to the complaint, the documents are not impertinent or scandalous, and they clearly are material to Plaintiff's claims, as Plaintiff asserts that Defendants "induced and continue to induce, New York Foundling to breach the New York Foundling Agreement by New York Foundling preparing derivative works based on" the documents. [Dkt. 36 at 14.] Defendants argue that they are "redundant" because some of the pages within them are repeated, but that simply means that the copyrighted works contain repetitious material; that does not make them redundant exhibits subject to being stricken. Accordingly, there is no basis to strike them.

### III. CONCLUSION

For the reasons set forth above, the Court **RECOMMENDS** that Defendants' Motion for Partial Dismissal and to Strike Irrelevant Exhibits to Amended Complaint [Dkt. 42] be **DENIED**.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

SO ORDERED.

Dated: 14 FEB 2020

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.